All right, we will continue with the third case of the day. This is Appeal 24-2021, Jacqueline Sterling v. Southlake Nautilus Health & Racket Club, Incorporated. And we'll begin, Mr. Shelest, with an argument from you on behalf of the appellant. May it please the court, I'm Sam Shelest for Jackie Sterling. We believe the court below erred in a series of ways de novo. First, as to the affirmative defense, which was the primary defense in this case, contributory negligence is made to the defendant's burden, which the court did not indicate. And secondly, it's not made by chance. The court said there was a chance that the following of the rule, the local rule 4004, would have made a difference. It is not more probably true than not, which in our view is an error of law, but most urgently, the defendant has argued that the violation of the rule is contributory negligence. Contributory negligence is not the violation of the rule. Contributory negligence is the violation of the rule proximately caused what happened. So those three errors of law led to an error, in our view, as the facts. There are no facts in this record that indicate the failure to give notice under rule 1004 to the local circuit court would have caused that writ to be recalled. The proximate cause of Jackie Sterling spending three and a half days in a jail cell, handcuffed with no female napkins, the proximate cause of her being jailed was the defendant issuing a writ in direct contempt of the bankruptcy code. What evidence of damages from the arrest do you claim weren't accounted for? The damages that were not accounted for are number one, loss of reputation and loss of liberty. Let me talk about loss of reputation. The court below in examining loss of reputation as an independent cause of action. But the court discussed it and looked at reputation and she got her job back, she got her licenses. It factored all of those facts here in. I respectfully disagree that they did and here's why. You just don't like the amount. I mean, it sounds to me like you're asking us to reweigh the evidence to say she lost her reputation for this certain period of time and the court didn't give enough weight to that. But that's reweighing the evidence, which is what we can't do. The reason I think it's an error of law is loss of reputation for the implication of a criminal act is per se damages. It is when a person such as Jackie Sterling has been arrested, the horseshoe records, and they're not lawyers, the horseshoe records indicate this implies she committed a criminal act. The implication of a criminal act entitles her to per se damages. So when the court examined loss of reputation, they said there's no harm, no foul, she got her job back. That is incorrect. She now has a record that she has to explain and 10 years later, after the unfortunate events, to get her gaming license, she had to explain away the arrest record. So in other words, it does not account, and we cited a case where the judge as a matter of law errors by not accounting for the consequences of this contempt. This is, after all, direct contempt of a court order. The natural consequences should be paid for and punished. And the one that we focused on, which was your question, is loss of reputation. Your reputation is not restored because you got your job back. Your reputation is not restored because we were able to explain the arrest to get her a gaming license. Your reputation is damaged as a matter of law. We cited some law review articles that are important to note that an African American citizen with an arrest record has a terrible situation facing her. For the rest of her life, she has to explain an arrest that never should have occurred. There is no basis for this arrest. And I would also note that the loss of her liberty, spending three and a half days in these terrible circumstances, is a natural consequence. And to follow up your question, the court analyzed loss of reputation in terms of an independent tort. I am not permitted to bring a tort case. I wish I could seek a jury. Instead, we seek to punish the defendant for his contempt. And one of the ways we do that is to make sure they pay the consequences of the contempt. Did you present any evidence that the fact that she was arrested has prevented her from getting a job, has caused any other challenges for her? We presented evidence that we had to explain the arrest to get a job in Colorado, and she did get the job. She got the job, and the court considered that. But that distinguishment, Judge, doesn't take into account the damages for the implication of a criminal act are per se, and we shouldn't have to identify actual damages. That's what loss of reputation is. When you imply somebody committed... But you have to prove actual damages. And if... Actual damages for a per se violation are per se. In other words, you don't have to prove... What are you relying on for the per se violation? This isn't a malicious prosecution claim. So that law doesn't help you. In the bankruptcy context where you're arrested based on an arrest warrant that was issued because you didn't appear, what law are you relying on that there's a per se violation? Well, we cite cases, Judge, that indicate that... You cite cases from malicious prosecution and other causes of action. But because we cannot seek tort causes of action, the only way to analyze... So you're trying to take these tort concepts and impose them in the bankruptcy concept. And my question is, what supports that here for your argument of per se damages? Because I haven't found any cases saying there are per se damages in this context. Because this case is sui generis. So if we don't accept your argument that there should be per se damages for this, what's your... If we do not accept your argument that there should be per se damages for her arrest, what's your strongest argument of the evidence you submitted of the harm this arrest caused? The strongest evidence... Based on evidence in the record only. I understand. The strongest evidence is, number one, there is a permanent record at Horseshoe where, of course, she had her gaming license with the implication of criminal act, which is untrue. Secondly, in order to get the gaming license, we had to disclose the arrest and explain it. And we're going to continue to have to do that for the rest of her life. In other words, most jobs you're going to get asked, is there an arrest? Is there any evidence she's going to leave her job that she has now, that she got with the arrest? I have no idea what she's going to do in the future. Of course not. But I can tell you that the harm is having to explain a permanent record that we cannot expunge. In a criminal situation, of course, we could expunge the arrest record. We can't do that here. It's a permanent record. And you have already had to in Colorado. That is correct. And I would emphasize, respectfully to your question, it is a damage to have to explain to new people, I was arrested, but I wasn't guilty of anything, or I had to file a bankruptcy, and this arrest came about that shouldn't have come about, to answer the question. That, to me, is an act of damage that the court didn't consider. When it wrote its opinion, Judge Aylor said, I'm not going to consider that because she got her job back. But that, in my view, is not what reputation is about. Let me also emphasize in answer to your question, it is a breach of the court's principle to analyze this case in terms of tort principles. And here's why. When you look at the defendant's brief and all the briefing below, counsel says, the proximate cause of plaintiff's injury is the failure to follow the rule. Proximate cause is a tort concept. The only way we can analyze this case, which is sui generis, there are no other reported or very few reported cases similar to this, is in terms of tort, because that's what proximate cause defense is. And let me emphasize that the reduction of 50% for proximate cause is not based on what happened, based on the clerk of the circuit court indicating that this notice would not have recalled the writ. And we know on the Monday she was in jail. They couldn't get her out of jail on a notice. They had to bring an emergency motion to have the file pulled. That wasn't their procedure then. I realize that we're younger people now, and this is an email world, but at the time that didn't happen in the circuit court. I realize I only have a few minutes to reserve for rebuttal. Let me discuss my fees, obviously an issue of some importance to me. The court below determined my reasonable fees after 12 long years of litigation were $199,000. That should have ended the inquiry. Reducing my fees for the client's contributory negligence, although we don't believe there was any, is inappropriate. There's nothing in the order that the court cites for authority to reduce my fees by 50% to apply the contributory negligence of the client to me. Who, Mr. Shelest, had the duty to give notice under the local bankruptcy rule? Was it the client, the attorney, both? The attorney had to obligate, the client ultimately, because I guess you could file a pro se bankruptcy, was obligated to send a notice to the circuit court of any case that was pending. But I want to emphasize as strongly as I can, the record is resolutely clear that the circuit court clerk testified if we got this errant notice he would go in the garbage can. The file would not be pulled, the writ would not be quashed, and nothing would happen. Now that may be criticism of the local court system's procedures back then, but proximate cause is not made by chance. And the court below said there's a chance, and counsel says there's a chance things would have been different. That doesn't meet the standard and the court should reverse on proximate cause. There is no evidence to support it and certainly restore my fees. The last point I would make is you remanded plus costs to award no costs in this situation, which means my client essentially receives nothing. And that is not a fair result, I ask, since my time is running short, for rebuttal. Thank you. Real quick, if I could ask one question, please. On the cost issue, is there any rule in the bankruptcy court for the Northern District of Indiana that sets a time limit for filing a bill of costs? Not that I know so. Okay. I don't believe so. Thank you. Thank you. I ask for a few minutes of rebuttal. Yes, that'll be granted. Thank you. We'll now move Mr. Steele to you for argument on behalf of the appellee. Thank you, Your Honor. Kevin Steele on behalf of the appellee, South Nautilus Health and Racquet Club, Inc. I think the briefs make it clear here what the issues are, and I disagree with the standard review provided by Mr. Schellest at the beginning of his argument. I believe that the matter is to be reviewed for an abuse of discretion, that a civil contempt award by a bankruptcy court for a willful violation of the discharge injunction is considered a sanction, and that this court reviews the bankruptcy court's imposition of sanction for abuse of discretion, not de novo. And I believe . . . Oh, if you're . . . When you're done, go ahead. No, I was going to move on. Yeah. That's good because I want to ask you about the decision to cut the attorney's fee award in half based on the finding that the client, Ms. Sterling, was 50% of fault. I really am struggling here. What does her degree of fault have to do with the reasonable number of attorney hours spent on this case and the appropriate fee for those hours? Wouldn't Ms. Sterling's attorneys have been required to devote the same amount of time, put on the same evidentiary case to the bankruptcy court, even had they known from day one that her damages would be reduced based on her degree of fault? I mean, even in retrospect, we can't say that simply because the bankruptcy court found Ms. Sterling 50% responsible for her injury, her attorneys should have devoted 50% less time to her claim, can we? Your Honor, I don't envision the decision of the court in that context because when the case was remanded the last time by this court, the final sentence of that opinion was, we leave to the bankruptcy court's discretion whether to factor this into the damages calculation, which is talking about the failure to comply with local bankruptcy rule 4002-1A. And had that rule been complied with, Mr. Schellest spent some time talking about testimony from a retired individual in the clerk's office about what would happen if that notice had been provided. But the other part of providing that notice is providing the attorney who filed the case. And the testimony at trial of this matter from Mr. Austgen, who was the attorney on behalf of my client, was clear that if his office had received that notice of bankruptcy, they would have recalled the warrant and abated all collection activity at that point in time. So the failure by Ms. Schellest and her attorney contributed to this situation, and the court found that that fault, that failure to mitigate damages is the other way to look at that, was worth, in essence, reducing the damages award by 50%. And the problem, I suppose, Your Honor, with the Mr. Schellest imposition was he was not the attorney who filed the bankruptcy. But that attorney failed to comply with the local rule, which created the circumstance. And so in your analysis there, it creates a situation where if the plaintiff obtained a new attorney, somehow you get away with it because you changed an attorney. And I can't believe that that's the meeting of what the rule would require and the damages that flow from that. You know, injuries like this one involve a deprivation of one, you know, involving a deprivation of someone's liberty are inherently very difficult to quantify, and they often result in only minor awards of damages. And arbitrarily having, you know, halving the fee award based solely on the fault of the plaintiff would, in my mind, really serve as a disincentive for attorneys to take these kinds of cases. And, you know, I . . . Though, Your Honor, I suppose I would say it also incentivizes attorneys to comply with the local rule, which I think the testimony was clear at trial and the orders entered by the bankruptcy court were clear that had the local rule been complied with, this situation never would have occurred. Well, how should we factor in the fact that you didn't follow the local rule either, or . . . right? No, Your Honor, there was no obligation on the local rule for Southlake that the local rule that we're talking about required the debtor and the debtor's attorney to provide that notice in any civil action pending against the debtor at the time of the filing of the bankruptcy. And on that topic, is it a disjunctive, a conjunctive? Whose duty really is it? Client, attorney, both? Both. Because it's written in the conjunctive or the attorney stands in the shoes of the client or this is why she spent the time in jail, is that they didn't get it. That's correct, Your Honor. And I think that it generally, in practice, is the attorney who files it. Obviously, as indicated by Mr. Schellest, in a situation of a pro se bankruptcy, the debtor has that obligation. Generally, that obligation is fulfilled by the debtor's counsel who files the notice to the court, which, as indicated, would have led to Mr. Austin withdrawing the warrant and preventing the situation from occurring. With regard to the damages award that was made, we don't believe that the court abused its discretion in determining the amount of the award for each of the nights that Ms. Sterling spent in jail. The court pointed to other cases where individuals had spent nights in jail in bankruptcy context and awarded a bit more than those cases for each nights. The standard that we look to in the abuse of discretion context is whether the bankruptcy judge acted within the reasonable range of options available to a judge sitting in that situation. I think that the bankruptcy judge supported his imposition of damages for the nights in jail by pointing to other instances and making a similar award, in fact, a little higher than those similar cases that he pointed to. You know, as a result of Southlake's violation of the discharge order, Ms. Sterling has an arrest record. And look, of course I understand, she didn't lose her job and she hasn't lost her gaming license. But how can that mean that she suffered no compensable harm from the arrest? Apart, you know, from the indignity of the arrest itself, doesn't she suffer from embarrassment, the burden of explanation every time she has to disclose the arrest? She may very well wish in the future to move or get another job and to have to explain away if she even gets that opportunity, because once an employer sees arrest, you know, they very often just sort of move on. Why is that not compensable? Well, Your Honor, I believe that on the remand after this court's decision, the only testimony that was presented at the trial was that of Mr. Schellest with regard to his attorney's fees. So the statements with regard to what Ms. Sterling may or may not have to do were argument that were made by counsel at the conclusion of the case. We have no evidence of what she will or won't have to do into the future, and nor do we have any evidence to support what damages are attributable to that. She didn't testify at that hearing, correct? She did not testify at that hearing. And so I think that within the realm of the evidence that supplied to the bankruptcy court, the bankruptcy court made the best decision that it could, given the evidence that it was presented with, with regard to the potential impact on Ms. Sterling. With regard to the cost argument... Mr. Stelman asked the same question I asked of plaintiff's counsel. Is there any rule in the bankruptcy court or in the local rules that sets a time frame for filing a bill of costs? I am not aware of one. Because we have said that a prevailing party can wait until after appeal to file one. And I didn't see any rules or local rules or standing orders that said you have to file within X time. I am not aware of any such rule. Well, you know, she did ask for her costs in the pre-hearing briefing, but Judge Allard never said anything about costs in his decision. And I mean, of course it's true, as Judge Simon pointed out, that she didn't itemize her costs in the briefing. But, you know, typically a bill of costs is submitted to the court after judgment. So I'm really wondering why we shouldn't remand for reconsideration as to costs. Well, you know, obviously all that we're saying is that the why the court didn't award any costs was because the bill of costs was never filed. And so to come up on appeal and say, hey, you should award costs, well, you know, you still haven't submitted your bill of costs to ask for costs. And I think that's what Judge Allard and Judge Simon were both saying is, well, of course the court didn't award any costs because there was no request made for the costs other than a statement at the end of, you know, the wherefore paragraph asking for an award of costs. With regard to the reduction of the damages in the attorney's fees, I believe that I've cited to case law that indicates that a bankruptcy court has the authority to make considerations necessary to allow for a reduced award of fees based upon what has happened in the case. I believe that in this particular case, the actions, not of Mr. Schellis, but of the debtors counsel leads to a conclusion that the fee reduction was appropriate. There's also statutory law under the bankruptcy code that I cited to that allows for the court to make a determination of what fees it may or may not award in a particular instance. I believe that the court in this particular instance did not abuse its discretion, even if the court now looking back at it disagrees with what the judge perhaps did. It was within the range of a reasonable action by a judge, and he did not abuse his discretion. And Southlake would ask that the court affirm the decisions made by judges Aylor and Simon. Thank you. Thank you, Mr. Steele. Mr. Schellis, you're up next for rebuttal argument. First, let me correct. Rule four does not, four thousand and four does not, both judges rejected this, require notice to Mr. Austin, the creditor's attorney. It required notice to the local circuit court. Both judges rejected that that was the meaning of rule four thousand and four. So when counsel says, if Mr. Austin had received the notice, he wouldn't have issued the writ. The rule does not say that. The issue here is when the notice goes to the Superior Court, Lake County, what they would have done with it. And we know what they would have done with it. Nothing. There is absolutely no dispute in the evidence that the circuit court in Lake County did nothing with bankruptcy notices and the proximate cause of this arrest was not the violation of rule four. Counsel's own brief says we have examined this in tort principles as proximate cause. What is the actual cause of the arrest? Was the writ issued in contempt of this court's discharge? As to the fees, I am the prevailing lawyer. I hate to discuss fees this way. It makes me feel uncomfortable. But I have spent 12 years on this case. I prevailed in the Court of Appeals last time. I have argued this case to trial. I have argued this case for 12 years. The contributory negligence, if it exists, has nothing to do with my fees. And it is an abuse of discretion. And there is no rational basis to reduce my fees by 50 percent. As to the costs, I, of course, would itemize them when the case is over. But the case wasn't over, so we didn't itemize the costs. I want to talk again, though, about the word... When you say the case is over, what do you mean? What time frame? When there's a... The case is over in the bankruptcy court, district court, our court? When this case is over in the sense that there's no appeal and there's a final judgment that's not being appealed, within the 30 days, I would file a bill for costs. But since I was appealing on behalf of Jackie Sterling, there wasn't any point in bringing a bill for costs at that point. And I would also note, as noted by Judge Roedner, when you remanded the last time, it said plus costs, and I hadn't yet itemized because there wasn't any reason to. Judge Ayler never gave a reason for not giving me costs. He didn't address costs at all. He didn't address it at all. He didn't say you couldn't get them. He didn't say anything, right? He didn't say anything. And I think that the rule, as I understand it, is costs are... The word is must, and so I ask that you must allow me to get costs. Let me just talk about Jackie Sterling in final moment. This is a person who should never have been jailed. There is one and one reason only that she spent in jail, and that is because a creditor chose to issue a writ when they got the notice of discharge, and before that, the notice of automatic stay. They could have picked up the phone, called their lawyer, and said, close your collection file. What's going on in the case? And be told there was a writ of attachment issued. Withdraw it and do something. This creditor thumbed its nose, as Judge Simon said, at the bankruptcy procedures. They're the ones in contempt, and we ask that you reverse for the reasons stated. I thank the court for the opportunity to speak to you today. Thank you, Mr. Shawless. Thank you, Mr. Steele. The case will be taken under advisement.